

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| TIMOTHY LEE YORK, #15137-078 | § | |
| | | |
| VS. | § | CIVIL ACTION NO. 4:11cv130 |
| | | CRIM. ACTION NO. 4:07cr181(1) |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Movant Timothy Lee York, a prisoner confined at FCI Seagoville in Seagoville, Texas, filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

Background

On October 13, 2008, a federal jury convicted Movant of (1) arson, (2) use of carrying a destructive device during, and in relation to, a crime of violence, and (3) possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 18 U.S.C. §§ 844(f)(1), 924 ( c)(1)(B), and 26 U.S.C. § 5861(d), respectively. On February 22, 2009, the Court sentenced him to imprisonment for 497 months. Movant filed a notice of appeal. The Fifth

Circuit Court of Appeals affirmed his conviction and sentence on March 9, 2010. *United States v. York,* 600 F.3d 347 (5th Cir. 2010). The United States Supreme Court denied his a petition for writ of certiorari on October 8, 2010.

Movant filed a prior motion pursuant to § 2255; however, his petition was pending with the United States Supreme Court at the time. Accordingly, that motion was dismissed without prejudice. After the United States Supreme Court denied his petition for writ of certiorari, Movant filed the present § 2255 motion on March 15, 2011. The Government filed a Response, asserting that Movant's motion is without merit. Movant did not file a Reply.

Facts of the Case

The facts of the case were outlined by the Fifth Circuit Court of Appeals:

As Jeremy Carroll and his father-in-law, Walter Vickers, drove home from church on the evening of February 21, 2006, they saw a fire at the Cooke County Courthouse in Gainesville, Texas. It was two to three feet high burning at a courthouse window. At the time, the courthouse was being renovated, so the window where the fire burned had been boarded up with plywood. They stopped their car, called 911, and approached the courthouse. When Carroll saw a broken bottle at the base of the fire, he kicked it away. He testified that after kicking away the bottle, the flames died down somewhat, but continued to burn around the bottle. Vickers testified that he saw liquid inside the bottle. When firefighters arrived, they attempted to put out the fire. The captain of the fire department testified that a Molotov cocktail caused the fire. A chemist for the state conducted a gas chromatography test [that] revealed gasoline residue in the glass bottle discovered at the courthouse. The firefighters discovered a checkbook at the scene. The Fire Marshall testified that the checkbook was somewhat intact after it had been rolled up and used as a wick for the Molotov cocktail.

The checkbook had printed on or in it York's name and address in Irving, Texas. Investigators went to the address, but found that York's parents lived there. York's mother informed investigators that York's father had taken him to Gainesville for a forfeiture hearing. Investigators learned that York stayed at a Ramada Inn two blocks away from the courthouse while he was in Gainesville. Using information from his parents, and further investigation into his activities in Gainesville, investigators discovered that York had moved into a girlfriend's house after staying at the Ramada Inn. The girlfriend gave investigators consent to search her home. They found a

2

duffel bag that belonged to York. It contained an order signed by Texas district judge Janelle Haverkamp for a scheduling conference in a forfeiture suit of York's property. Judge Haverkamp presided over this suit and had chambers in the Cooke County Courthouse. The bag also had in it a document with Judge Haverkamp's home phone number and an incorrect home address for her. Investigators also found in the bag high resolution maps of the home that York apparently believed to be Judge Haverkamp's, a photo of the judge, and notes of research into the security of the courthouse.

York's then-girlfriend, Brenda Finch, also told investigators that York had borrowed her car and driven to Oklahoma, where he was arrested on criminal charges. The Fire Marshal and another agent traveled to Oklahoma to interview York who was in custody there. During the interview, York admitted that he was very angry about a prior forfeiture proceeding against him. Incident to an arrest on July16, 2005, forfeiture proceedings had been brought by the State of Texas against York's vehicle and about $865 cash that they found in that vehicle. York admitted that, out of anger, he purchased gasoline, bought a bottle of Jack Daniels Liquor, and created the Molotov cocktail by pouring the gasoline in the bottle and using his checkbook as a wick. York also admitted to lighting the checkbook and throwing this Molotov cocktail against the boarded window at the courthouse. When the investigators questioned York about the information he had about Judge Haverkamp and the courthouse, York became visibly agitated and refused to answer questions.

At trial, York recanted his confession, stating that he only admitted to using the Molotov cocktail because he wanted to get out of Oklahoma state jail. The Government corroborated York's confession with the testimony from York's co-workers and Finch who heard the defendant threaten to blow up the courthouse. In response to the Government's evidence, York called multiple witnesses, including his father and himself. After the Government's rebuttal evidence, instructions and arguments from both sides, the jury found York guilty on all three counts.

*York,* 600 F.3d at 351-52.

## Federal Habeas Corpus Relief

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn

between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

Discussion

Movant asserts that he is entitled to relief based on of ineffective assistance of counsel. In order to succeed on a claim of ineffective assistance of counsel, a movant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 697.

Movant asserts that his counsel was ineffective because "had his trial attorney investigated further, he would have discovered that [Movant] was mentally incompetent to stand trial." A

4

defendant who alleges a failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). However, Movant points to no evidence in the record to support his allegation nor does he allege with specificity what further investigation or research would have revealed and how it would have altered the outcome of his case. *Id*. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 7 99 (5th Cir. 1982).

Movant's trial counsel, Robert Arrambide, filed an affidavit in response to Movant's allegations. Counsel states that he met with Movant several times and discussed Movant's personal history, medical history, psychological history, and his defense. Movant told his counsel about problems with his father, various hospitalizations due to drug abuse and a family history of schizophrenia. Movant told counsel that, after Cooke County seized his vehicle and cash, he planned on making a "statement" to the State officials to show that Cooke County officials were crooks and thieves. He explained his initial plan was to spray-paint the Cooke County Courthouse with a message. When he was unable to find spray paint, he decided to set a fire near the steps of the courthouse.

Counsel stated that, based on Movant's voluntary commitment at the Texoma Medical Center's Behavior Health Center, he spoke to Movant about using his mental health as a possible defense to his charged conduct. After suggesting an evaluation for insanity at the time, especially considering his admitted heavy drug and alcohol use in the days preceding the fire, Movant "steadfastly refused" to consider an evaluation or a plea. Based on Movant's ability to factually recount all the details of the offense and the time period immediately preceding and immediately

5

following the fire, counsel abandoned the insanity defense idea.

Counsel stated that Movant was "rational, lucid, articulate, and highly intelligent" during all consultations. He did not present any symptoms that caused counsel or his investigator to believe that Movant was delusional or psychotic in any way. Although he would occasionally get angry, he was very logical and concise in his thought processes and arguments. Movant was offered a plea agreement of seventeen years' imprisonment if he would plead guilty to using or carrying a destructive device during and in relation to a crime of violence, but he refused to accept the offer. He said that it seemed excessive considering the "paltry" amount of damage to the courthouse. Movant offered to plead guilty to arson, but no such plea agreement was reached. Counsel concluded that Movant rationally consulted with him at all times, assisted with the facts, and seemed to have a rational understanding of the trial process including its possible outcome. Movant "also demonstrated his understanding of the process and trial proceedings by writing many pages of notes during the trial." Counsel noted that these notes written by Movant were factually based, logical, and insightful.

Movant claims that, based on the testimony at trial and sentencing concerning his history of mental illness and substance abuse and the subsequent ruling in the Northern District that he was incompetent to stand trial, "it cannot be the right answer to have tried him in connection with the three-count indictment, given what everyone can see as [Movant's] lack of incompetence, and likely incompetence in October 2008." Due process prohibits the conviction of an accused who lacks mental competence to stand trial. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct 836, 838, 15 L. Ed.2d 815 (1966). An accused must have both "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and "a rational as well as factual understanding

6

of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 904, 43 L. Ed.2d 103 (1975). To obtain a habeas corpus hearing on a substantive claim that the right not to be tried while incompetent had been violated, the accused must offer clear and convincing evidence to raise a threshold of doubt about his competence. *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980). The accused must present evidence from before the trial raising a bona fide doubt about his competence. *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983).

In this case, Movant's counsel noted that when he suggested that mental competence might be a possible defense, Movant "steadfastly refused" to consider an evaluation or a plea. Counsel noted that, based on Movant's ability to factually recount all the details of the offense and the time period immediately preceding and immediately following the fire, counsel abandoned the insanity defense idea. Counsel stated that Movant was "rational, lucid, articulate, and highly intelligent" during all consultations, presenting no symptoms that caused counsel or his investigator to believe that Movant was delusional or psychotic in any way. Counsel noted that, although Movant would occasionally get angry, he was very logical and concise in his thought processes and arguments.

Movant has not shown that counsel was ineffective for not pursuing the mental incompetency defense because he has not shown that he was unable to consult with his counsel with a reasonable degree of rational understanding. *Drope*, 420 U.S. at 172, 95 S. Ct. at 904. He also has not shown that he did not have a "rational as well as factual understanding of the proceedings against him." *Id*. Movant has also failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Finally, to the extent that Movant may be also claiming that the trial court erred by not

conducting a competency hearing, Movant failed to present evidence from before the trial raising a bona fide doubt about his competence. *Holmes*, 709 F.2d at 967. He failed to offer clear and convincing evidence to raise a threshold of doubt about his competence. *Id.* As in the present case, where a defendant understands the trial proceedings and was able to coherently narrate what had happened in his life as a whole, as well as immediately before trial, the defendant was not incompetent to stand trial in spite of his lifelong history of severe mental deficiency and bizarre, volatile, and irrational behavior. *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir. 1976). Mere retrospective assertion of trial incompetency, standing alone, is insufficient to require an evidentiary hearing. *Id.* This issue is without merit.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully recommended that this court, nonetheless, address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack*

8

*v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the court find that Movant is not entitled to a certificate of appealability as to the claims raised.

Recommendation

It is recommended that Movant's motion for relief under 28 U.S.C. § 2255 be denied and the case dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from

*de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 11th day of February, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE